IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSCAR GERMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-3830 |
| | § | |
| ELEMENTIA USA LLC | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Oscar German ("Plaintiff" or "Mr. German") files this Original Complaint against Elementia USA LLC ("Defendant").

**SUMMARY**

1. Until October 2019, Mr. German served as Defendant's Vice President of Human Resources. Mr. German worked for Defendant from 2016 to 2017 and then again from 2017 to 2019.

2. Defendant terminated Mr. German for the articulated reason of a conflict of interest for engaging in a relationship with a subordinate during his first stint with the company.

3. The subordinate, who is female, was not terminated. Meanwhile, another female employee who engaged in the same alleged conduct was not terminated.

4. Mr. German was discriminated against on the basis of his gender (male) when he was terminated.

5. Mr. German's termination was in violation of Title VII of the Civil Rights Act of 1964.

6. In addition, Defendant did not pay Mr. German his 2018 annual bonus in full and thus is liable for breach of contract.

## THE PARTIES AND JURISDICTION

7. Plaintiff Oscar German is a natural person residing within the confines of the Southern District of Texas, Houston Division. Plaintiff has standing to file this lawsuit.

8. Defendant Elementia USA LLC is a Delaware company operating within the confines of the Southern District of Texas, Houston Division.

9. Defendant may be served with this Complaint through its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer Road, Suite 1000, Houston, Texas 77056, or through its counsel.

10. The Court has personal jurisdiction over Defendant based on general jurisdiction.

11. The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act and supplemental jurisdiction for the breach of contract claim.

12. Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

## FACTUAL BACKGROUND

13. Plaintiff worked for Defendant from 2016 to 2017 and then again from 2017 to 2019. As part of his duties, Plaintiff supported Allura, a building materials company; Nacobre USA, a metals company; and Giant Cement. He reported to Claudia Sainz, Chief Human Resources Officer, and Bob Musselman, Chief Executive Officer (Allura).

14. Plaintiff was terminated on October 14, 2019 for the pretextual reason of having a conflict of interest. Defendant's articulated reason for Plaintiff's termination was conflict of interest because he engaged in a relationship with a subordinate during his first stint with the company. The subordinate, Christina Mercado, who is female, was not terminated.

15. Meanwhile, Jessica Navascues, CEO (Allura) had relationships with direct reports, Shawn Herrington and Tony Ellis. She was not terminated. In addition, Christina Mercado, Corporate Human Resources Manager, herself had a relationship with a subordinate, Brett Melton, and she was not terminated for that either, even though she offered her live-in boyfriend a salary that was not commensurate and not approved, despite being previously warned about this matter. Ms. Mercado also utilized that relationship to improperly access email messages of other employees. When she met with Mr. German and Mr. Musselman to discuss the ordeal, she falsified her account of the events and attempted to blame the Vice President of Sales of Allura, Kevin Pothoff, for approving the salary and vacation.

16. An underwhelming and incomplete investigation, if any, took place with respect to Plaintiff's alleged conflict of interest. Key individuals were never interviewed, including members of the senior management team and Plaintiff's direct supervisor, Bob Musselman. The decision was made by Fernando Ruiz, who knew about the relationship between Jessica Navascues and Tony Ellis but took no action against her.

17. Moreover, it is highly suspect that Plaintiff would be the sole individual terminated for conflict of interest for something that occurred more than two years prior to his termination. Plaintiff was terminated on October 14, 2019 for something that allegedly occurred in early 2017. Plaintiff had no performance issues and no other reason was cited for his termination. In fact, his performance appraisals will demonstrate that he was a top-performing vice president of a top-performing department.

### TITLE VII CLAIM OF SEX DISCRIMINATION

A. **Legal Standards**

18. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

19. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

20. Discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

21. Where the plaintiff has not presented direct summary judgment evidence of discrimination, courts apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, to establish a *prima facie* case of race discrimination in a demotion case, a plaintiff must show that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

22. After the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse employment action. *Black*, 646 F.3d at 259; *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

23. The burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black*, 646 F.3d at 259 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).

24. All conditions precedent to this suit have been fulfilled.

**B. Analysis**

25. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

26. Plaintiff was part of a protected group, was qualified for the job he held, suffered an adverse employment action by being terminated, and was treated objectively worse than similarly situated employees. *See supra*.

27. Assuming, *in arguendo*, Plaintiff did violate Defendant's conflict of interest rule, which he disputes, he was treated objectively worse than comparator employees.

28. *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) is on point in evaluating why employees who were in different positions are still proper comparators to Plaintiff. Coleman was a female Postal Service employee who was terminated after 32 years of employment for workplace violence, yet two male employees who had also committed workplace violence received only one-week suspensions. *Coleman*, 667 F.3d at 840-41. The court held that the male "comparators were disciplined not for bad performance but for violating a general workplace rule that applied to employees in all departments and of all ranks. In such misconduct cases (as opposed to performance cases), comparisons between employees with different positions are more likely to be useful." *Id.* at 849.

29. In disparate discipline cases, the similarly-situated inquiry often hinges on whether co-workers "'engaged in comparable rule or policy violations' and received more lenient discipline." *Id.* at 850 (internal citation omitted). This is especially true when a uniform policy applies across the board to all employees. *Id.* at 849. Likewise, Defendant's relevant policy does not apply selectively or with exception.

30. Moreover, when employees violate the same rule, the fact "[t]hat they did not break the rule in precisely the same manner does not mean that summary judgment [is] appropriate." *Id.*

at 851.  "Where a proposed comparator violated the same rule as the plaintiff in an equivalent or more serious manner, courts should not demand strict factual parallels." *Id.* at 851.  "To require that employees always have to engage in the exact same offense as a prerequisite" would result in an unacceptable scenario "where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination." *Id.* (internal citation omitted).

31. Arguments about the credibility or culpability of behavior are suited for trial and the decision "to punish some conduct more harshly than other conduct" is a fact issue in "the province of the jury." *Id.* at 851.  Moreover, the question of whether other employees who kept their jobs are comparators to Plaintiff is likewise one for the jury.  *See Morris*, 827 F.3d at 402 (5th Cir. 2016) (the inquiry of whether an employee is similarly situated is "often reserved for the fact-finder.").  To overcome summary judgment, the plaintiff must merely "produce sufficient evidence that would permit a reasonable fact-finder to conclude that the plaintiff and other employees are similarly situated." *Id.*

**C.     Damages**

32. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

33. Plaintiffs who prevail in a Title VII discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

34. Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy.  *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992).  If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law.  *See*

*Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Unlike back pay, front pay refers to future lost earnings.

35. Prevailing plaintiffs are entitled to compensatory and punitive damages under Title VII. *See* 42 U.S.C. § 1981A(a)(1). Plaintiff is entitled to both. Prevailing plaintiffs are also entitled to attorneys' fees and costs and Plaintiff seeks to recoup these amounts.

## CLAIM FOR COMMON LAW BREACH OF CONTRACT

36. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

37. In order to prevail on a breach of contract case, a plaintiff must demonstrate (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by plaintiff as result of the breach. *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

38. Plaintiff and Defendant had a pay agreement that constitutes an enforceable contract. The agreement described bonus payouts.

39. Defendant breached this agreement by not paying Plaintiff his 2018 annual bonus in full.

40. Specifically, Defendant improperly calculated his annual bonus on the basis of 360 days of work instead of 260 days, as they previously did and as the agreement declared. The 260 days calculation results from multiplying the standard 40-hour workweek by 52 weeks in a year and then dividing the result (2,080 hours) by the standard 8-hour workday (40 * 52 / 8 = 260). This resulted in Plaintiff, as well as other Defendant employees, being shortchanged the amount of their annual bonus.

41. Plaintiff has suffered and continues to suffer economic damages as a result of this breach.

42.     Due to the necessity of this suit, Plaintiff has also incurred attorney's fees and court costs. Plaintiff seeks recovery of reasonable attorney's fees and court costs for this litigation and, if necessary, appeal pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009.

## JURY DEMAND

43.     Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that he be awarded a judgment against Defendant for the following:

a.  Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b.  Reinstatement or front pay;

c.  Compensatory damages;

d.  Punitive damages;

e.  Prejudgment and post-judgment interest;

f.  Court costs;

g.  Attorney's fees; and

h.  All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
OSCAR GERMAN